John K. Bennett, Esq. (Bar ID #024201980)
Leslie A. Saint, Esq. (Bar ID #018022008)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200
ATTORNEYS FOR DEFENDANT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN JACKSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| vs. | : | |
| | : | |
| PEPSI BEVERAGES COMPANY, JOHN | : | **NOTICE AND PETITION FOR** |
| DOES (1-10), JANE DOES (1-10), ABC, | : | **REMOVAL FROM THE SUPERIOR** |
| LLC (1-10), ABC LLP (1-10), JOINTLY, | : | **COURT OF NEW JERSEY, LAW** |
| SEVERALLY, INDIVIDUALLY, | : | **DIVISION, MIDDLESEX COUNTY** |
| | : | |
| Defendants. | : | |

TO:   William T. Walsh, Clerk of Court
      United States District Court for the District of New Jersey
      Clarkson S. Fisher Building & U.S. Courthouse
      402 East State Street Room 2020
      Trenton, New Jersey  08608

      Christopher C. Roberts
      7 Glenwood Avenue, Suite 401
      East Orange, New Jersey  07017
      Attorneys for Plaintiff


      Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant, Pepsi Beverages Company,

respectfully submits this Notice and Petition for Removal of a case from the Superior Court of

New Jersey, Law Division, Middlesex County, bearing Docket No. MID-L-001712-20, and as

grounds for removal states as follows:

1.      Plaintiff, John Jackson, filed this civil action against Defendant in the Superior Court of New Jersey, Law Division, Middlesex County, on March 15, 2020.  A true and correct copy of Plaintiff's Complaint ("Complaint") is attached hereto as Exhibit A.

2.      Defendant was served with a copy of the Summons and Complaint on March 19, 2020.

3.      No proceedings have taken place in the state court action.  Defendant has not served an answer or other pleading in response to Plaintiff's Complaint, or made any appearance or argument before the Superior Court of New Jersey.

4.      This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446(b).  Defendant effected removal within thirty (30) days of being served with Plaintiff's Complaint, the paper from which it could first be ascertained that this action is removable.  See 28 U.S.C. § 1446.

5.      This action arises out of, in part, Plaintiff's claims that his employment with Defendant was unlawfully terminated in or around August 2019.

6.      In his Complaint, Plaintiff alleges, *inter alia*, that Defendant violated his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  See Exhibit A, at Count Two.

7.      Accordingly, this action is removable to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1331, by virtue of its federal question jurisdiction arising out of Plaintiff's claims under the FMLA, 29 U.S.C. § 2601, *et seq*.

8.      Pursuant to 28 U.S.C. §1441(a), this action may be removed to this Court because it is founded, in part, on claims or rights arising under the laws of the United States.

2

9.      In addition, in his Complaint, Plaintiff asserts a common-law claim of breach of implied covenant of good faith and fair dealing, alleging Plaintiff has an "employment agreement with an implied covenant." (See Exhibit A, at Count Five).  Plaintiff is a bargaining-unit employee covered by a collective bargaining agreement ("CBA") between Defendant and Teamsters Local Union 125 (See Exhibit B, a true and correct of the CBA). The CBA covers the Plaintiff, and is applicable to the time period relevant to Plaintiff's claims (See id.).

10.     Plaintiff's claim in Count Five of his Complaint is inextricably intertwined and substantially dependent upon the interpretation of the terms and provisions of the applicable CBA.  Therefore, such claims are completely preempted by federal labor law and national labor policy under Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  See Treusch v. Center Square Supermarket, LLC, 921 F.Supp.2d 336, 341 (D.N.J. 2013) (complaint removed from state to federal court based on LMRA Section 301 preemption of claims alleging employer's breach of agreement); N.J. Carpenters v. Tishman Constr. Corp., 760 F.3d 297 (3d. Cir. 2014) (removal to federal court based on LMRA Section 301 complete preemption of state cause of action that is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.").

11.     LMRA Section 301 preempts Plaintiff's claims because the CBA between Defendant and the Union representing its covered employees governs: (a) the terms and conditions of employment, (b) employee discipline and termination, and (c) dispute resolution procedures such as grievance and arbitration (See Relevant Excerpts of the CBA, attached hereto as Exhibit B).  Therefore, Plaintiff's common-law claim for breach of implied covenant of good faith and fair dealing against Defendant is completely preempted by federal labor law, and properly removed to this Court as presenting a federal question, pursuant to 28 U.S.C. § 1331.

3

12.     In addition, this action is further subject to removal to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, as it involves a controversy between citizens of different states:

    a.  Plaintiff is and has been, both upon the filing of his Complaint on March 15, 2020, and at the time of Defendant's filing of this removal petition, a resident of the State of New Jersey (See Exhibit A).

    b.  Defendant has been and is, both upon the filing of the subject Complaint on March 15, 2020, and at the time of filing of this removal petition, a corporation incorporated in the State of Delaware, having its headquarters and principal place of business located at 1129 Westchester Ave, White Plains, New York, 10604.

13.     As set forth in the Complaint, Plaintiff alleges the following causes of action: (1) disability discrimination in violation of the New Jersey Law Against Discrimination ("LAD") Count One); (2) violation of the FMLA (Count Two); (3) violation of the New Jersey Family Leave Act ("NJFLA") (Count Three); (4) Wrongful discharge (Count Four); (5) breach of implied covenant of good faith and fair dealing (Count Five); and (6) violation of New Jersey Wage Payment Law (Count Six).  While not specifically enumerated in Plaintiff's Complaint, the entire amount in controversy appears to contemplate an amount exceeding the sum of $75,000.  Plaintiff seeks to recover compensatory damages, punitive damages, attorney's fees, and any other relief the Court deems equitable and just.

14.     Given the relief requested by Plaintiff, Defendant submits that the amount in controversy exceeds the jurisdictional threshold set by 28 U.S.C. § 1332.

4

15.     Because there is complete diversity between the parties and the amount in controversy is in excess of $75,000, this Court has original jurisdiction over Plaintiff's claims by virtue of diversity of citizenship and satisfaction of the amount in controversy requirement of 28 U.S.C. § 1332.  This action is properly removable to federal court pursuant to 28 U.S.C. §§ 1332(a) and 1441(b), (c).

16.     To the extent any of Plaintiff's claims do not relate to the FMLA or are not subject to preemption under the LMRA, this Court nevertheless has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §§ 1367 and 1441(c).

17.     Defendant submits this notice and petition without waiving any defenses to the claims asserted by Plaintiff, or conceding that Plaintiff has pled claims upon which relief may be granted.

18.     Pursuant to 28 U.S.C. §§ 1441(a), venue lies in the United States District Court for the District of New Jersey because the state action was filed in this District and this is the judicial district in which the action arose.

19.     Pursuant to 28 U.S.C. § 1446(d), Defendant has given written notice of the removal of this action to all adverse parties, and has filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County.

**WHEREFORE,** Defendant submits respectfully that this action proceed in this Court as an action properly removed hereto.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200

*s/John K. Bennett*

By:

John K. Bennett
Leslie A. Saint
Attorneys for Defendant

Dated:  April 17, 2020

4824-0330-8730, v. 1

6

# EXHIBIT A

Exhibit A

Christopher C. Roberts (#001351995)
Attorney at Law
7 Glenwood Avenue, Suite 401
East Orange, New Jersey
(973)-673-0600
Attorneys for Plaintiff

|  |  |
|---|---|
| John Jackson,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Pepsi Beverages Company,<br>John Does (1-10),<br>Jane Does (1-10), ABC<br>Corporations (1-10), ABC, LLC<br>(1-10), ABC LLP (1-10), JOINTLY,<br>SEVERALLY, INDIVIDUALLY<br><br>　　　　　Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br>DOCKET NO: MID -L- 002712-20<br><br>Civil Action<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff John Jackson residing in the Township of Piscataway, County of Middlesex, State of New Jersey, complaining of defendants, alleges as follows:

## PARTIES

1. At all relevant times, Defendant Pepsi Beverages Company (hereafter "PBC") was and is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 2200 New Brunswick Avenue, Piscataway, New Jersey.

2. At all relevant times, defendants John Does (1-10), Jane Does (1-10), ABC Corporation (1-10), ABC, LLC (1-10), ABC LLP (1-10), were in the employ of defendant "PBC" whose location is at 2200 New Brunswick Avenue, New Jersey. At all relevant times, defendants John Does(1-10), Jane Does (1-10), ABC Corporation (1-10), ABC, LLC (1-

1

Exhibit A

10), ABC LLP (1-10), were the agents, employees, representatives, servants of defendant "PBC".

## FACTS COMMON TO ALL CLAIMS

This is an action for relief from employment discrimination in violation of the New Jersey Law Against Discrimination N.J.S.A. 10:5-1 et seq., New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq., , N.J.S.A. 34:11-56a1; Family Medical Leave Act, 29 U.S.C.A. section 2601); NJFMLA N.J.S.A. 34:11B-1, et seq. and NJ Wage Payment Law.

1. Upon information and belief, Plaintiff John Jackson alleges that Defendant Pepsi Beverages Company, and John (or Jane) Does 1-10 ABC Corp 1-10, all of whose true names are unknown (collectively, "Defendants"), unlawfully discriminated and retaliated against him on the basis of disability association, and for exercising his FMLA rights and harassed him on those bases and terminated him.

2. Upon information and belief, Plaintiff further alleges that Defendants' policies, practices, and decisions had a disparate impact upon him.

3. Upon information and belief, Plaintiff seek injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, and reasonable attorneys' fees and costs as remedies for Defendants' violations of his rights.

4. Upon information and belief, Defendant(s) Pepsi Beverages Company, John Does (1-10), Jane Does (1-10), ABC Corporations (1-10), ABC, LLC (1-10), ABC LLP (1-10),aided and abetted the discriminatory treatment against Plaintiff.

5. Upon information and belief, Plaintiff began his employment with Defendant PBC in or about 2006 as a Warehouse Loader.

6. Upon information and belief, Plaintiff's salary at the time of his termination in or about October 2019 was approximately $70,000.00. with benefits.

2

Exhibit A

8. Upon information and belief, Plaintiff was meeting his employment expectations at the time of his termination.

9. Upon information and belief, Plaintiff is married man has been married to his wife Shellece Roberts-Jackson since 2006.

10. Upon information and belief, Plaintiff's wife has had a series of major medical health ailments, which required Plaintiff as her care giver to seek leave to care for her.

11. Upon information and belief, Plaintiff had no major disciplinary issues and/or write-ups until in or about 2016.

12. Upon information and belief, Plaintiff exercised his first request for family medical leave in or about 2012 when his wife lost their child during child birth. Plaintiff was approved for medical leave.

13. Upon information and belief, Plaintiff's wife underwent brain surgery in or about 2016. Plaintiff informed Defendant PBC that his wife needed brain surgery and he requested medical leave. Plaintiff submitted a letter from his wife's neurologist explaining her medical situation to Defendant PBC's Human Resources Department. Plaintiff provided the letter to Jackie Whited and Oreo Sanchez in Human Resources. Plaintiff was given instructions from Human Resources on how to complete the paperwork and was connected with Sedgewick. Plaintiff completed the paperwork and was told by Sedgewick that his paperwork was fine and it was approved. However, Jackie Whited and Oreo Sanchez wanted more information from Plaintiff which Plaintiff did not have.

14. Upon information and belief, Jackie Whited and Oreo Sanchez made the process difficult for Plaintiff and caused him to miss days of work and not get paid. Plaintiff complained to Defendant PBC's headquarters to inform them of the difficult time Jackie Whited and Oreo Sanchez were giving him. Defendant PBC's headquarters told Plaintiff within a week to go back to work. When Plaintiff returned to work Jackie Whited and Oreo Sanchez told Plaintiff that he should not have gone to headquarters because they would have figured out the situation. Sedgwick approved the leave.

Exhibit A

3

15. Upon information and belief, in or about April 2018, Plaintiff's wife suffered form seizures and Plaintiff had to take care of her.

16. Upon information and belief, in or about 2019, Plaintiff's wife had to have surgery on her knee and Plaintiff had to request leave to care for her.

17. Upon information and belief, during the years 2016- through 2019, Plaintiff had to request medical leave to care for his wife for her illnesses. Plaintiff would have to be home to perform various duties including but not limited to having to bathe her, to care for her, to transport, fulfill her basic needs, her throughout her illnesses and recovery periods.

18. Upon information and belief, Plaintiff began to feel that representatives of Defendant PBC had animosity towards him for taking medical leave to care for his wife. For example, Human Resources would complain that Plaintiff's paperwork for requesting leave was inadequate because the print on the document was not dark enough. Another instance occurred in or about 2019 when Defendant PBC informed Plaintiff that he was out of time for medical leave for months but did not informed when his time allegedly expired instead waited to inform Plaintiff because they did not want to bother him. Plaintiff filed an internal grievance on Defendant PBC's failure to timely inform him of the exhaustion of hi medical leave. Defendant PBC placed Plaintiff out of work for going beyond his medical leave. Plaintiff was suspended from April 22, 2019 to May 21, 2019.

19. Upon information and belief, on or about August 29, 2019, Plaintiff was working on his shift in the warehouse. The warehouse was hot and Plaintiff became thirsty while operating the forklift. Defendant PBC always informed employees to stay hydrated while working. Plaintiff saw a bottle of Gatorade in breakage and took a bottle and began drinking it. Plaintiff left the bottle in the cupholder of the forklift that he was operating. Plaintiff's manager Steve Reed approached 3 warehouse employees which included Plaintiff and asked Plaintiff was that bottle of Gatorade in the cupholder was his. Plaintiff responded "yes". Steve Reed emphatically proceeded to inform Plaintiff that drinking a Pepsi product was not allowed on the warehouse floor and empty bottles were not allowed on the

Exhibit A

4

warehouse floor and drinking a beverage on the warehouse floor is equivalent to stealing. Plaintiff was perplexed because he has witnessed other employees having drunk Pepsi beverages on the floor without being chastised or reprimanded for drinking a Pepsi product on the premises. Steve Reed left the bottle of Gatorade in the cupholder of the fork lift and Plaintiff continued working on his shift.

20. Upon information and belief, Defendant PBC suspended Plaintiff indefinitely without pay on or about August 30, 2019 for taking a Gatorade from breakage after approximately 13 years of service.

21. Upon information and belief, Plaintiff contends that the reason for his termination was a pretext for retaliation for exercising his FMLA and NJFMLA rights and association disability discrimination.

22. Upon information and belief, Plaintiff contends that he was meeting his employment expectations.

23. Upon information and belief, Defendant PBC, in or about 2019, denied Plaintiff pay for time worked alleging that the pay to Plaintiff was incorrect.

24. Upon information and belief, Defendant PBC never requested Plaintiff to pay for the single bottle of Gatorade or suggest deducting the cost of the single bottle of Gatorade from his pay. Defendant PBC eventually terminated Plaintiff. Instead in or about September 2019, Defendant PBC made several efforts to compel Plaintiff to sign a statement incriminating himself by admitting theft.

25. Upon information and belief, Plaintiff has suffered damages resulting in the loss of compensation and benefits, physical injury and mental injury.

26. Defendants have committed the aforementioned acts oppressively, willfully and maliciously, entitling plaintiff to an award of punitive damages.

Exhibit A

5

## COUNT ONE

(NEW JERSEY LAW AGAINST DISCRIMINATION N.J.S.A. 10:5-1 et seq.)

1. Plaintiff refers to the allegations set forth in the Facts Common to All Claims and by such reference repleads and incorporates them as though fully set forth herein.

2. Defendants' conduct as alleged in this complaint constitutes an unlawful employment practice, disparate treatment, wrongful discharge, hostile work environment, retaliation, failure to accommodate, based on association disability discrimination, disability discrimination, in violation of the New Jersey Law Against Discrimination 10:5-1 et seq.

3. At all relevant times, N.J.S.A. 10:5-1 et seq., provided statutory jurisdiction over defendants. Defendants subjected plaintiff to retaliation, unequal pay, disparate treatment, wrongful termination, hostile work environment in violation of the New Jersey Law Against Discrimination.

4. As a direct foreseeable, and proximate result of defendants' discriminatory acts, plaintiff has suffered and continues to suffer substantial economic losses, potential earnings and potential employment benefits and has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress.

5. Defendant PBC has committed the aforementioned acts oppressively, willfully and maliciously, entitling plaintiff to an award of punitive damages.

Exhibit A

6

## COUNT TWO

### (VIOLATION OF FAMILY MEDICAL LEAVE ACT 29 U.S.C.A. section 2601 et seq.)

1. Plaintiff refers to the allegations set forth in the Count One above and by such reference repleads and incorporates them as though fully set forth herein.

2. Upon information and belief, Defendant PBC is an employer of at least 50 people.

3. Defendant PBC interfered with, retaliated against, restrained and/or denied Plaintiff protection afforded under the Family Medical Leave Act by discriminating and/or retaliating against plaintiff, by not protecting his job security and obstructing the care for Plaintiff's wife, because he exercised his rights under FMLA 29 U.S.C.A. section 2601, et seq.

4. As a proximate cause of defendants' conduct, plaintiff has suffered and continues to suffer substantial losses in earnings, retirement benefits and other employee benefits that plaintiff would have received had defendants not violated plaintiff's rights under the FMLA.

5. As a further proximate result of the above-mentioned acts, plaintiff has suffered economic losses, humiliation, mental pain and anguish.

## COUNT THREE

### (VIOLATION OF NJ FAMILY MEDICAL LEAVE ACT N.J.S.A. 34:11B-1, et seq.)

1. Plaintiff refers to the allegations set forth in the Counts One and Two above and by such reference repleads and incorporates them as though fully set forth herein.

2. Upon information and belief, Defendant PBC is an employer of at least 50 people.

Exhibit A

7

Defendant PBC interfered with, retaliated against, restrained and/or denied Plaintiff protection afforded under the New Jersey Family Medical Leave Act by discriminating and/or retaliating against plaintiff, by not protecting his job security and obstructing the care for Plaintiff's wife, because he exercised his rights under NJFMLA N.J.S.A. 34:11B-1, et seq.

3. As a proximate cause of defendants' conduct, plaintiff has suffered and continues to suffer substantial losses in earnings, retirement benefits and other employee benefits that plaintiff would have received had defendants not violated plaintiff's rights under the NJFMLA.

4. As a further proximate result of the above-mentioned acts, plaintiff has suffered economic losses, humiliation, mental pain and anguish.

## COUNT FOUR

## (WRONGFUL DISCHARGE)

1. Plaintiff repeats and alleges each and every allegation set for the in Counts One, Two and Three above as if fully set forth again at length.

2. The above-described actions of the defendants constitute a wrongful discharge.

3. As a further proximate result of the above-mentioned acts, plaintiff has suffered lost earnings, benefits, humiliation, mental pain and anguish.

## COUNT FIVE

## (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

1. Plaintiff repeats and alleges each and every allegation set for the aforementioned paragraphs in Counts One, Two, Three and Four above as if fully set forth again at length.

Exhibit A

8

2. The above-described employment agreement has implied in law a covenant of good faith and fair dealing by which defendants promised to give full cooperation to plaintiff in exchange for performance under the employment agreement, staff handbook and to refrain from any act that would prevent or impede plaintiff from performing all the conditions of the agreement.

3. Defendant breached its implied covenant of good faith and fair dealing with regard to plaintiff by discriminatorily refusing to judge plaintiff on the basis of his ability and merit, by refusing and failing to make available to him the benefits he was entitled to under the employment policies and covenants, by terminating him without exercising progressive discipline with regard to drinking a bottle of Gatorade in the warehouse.

4. As a proximate cause of defendants' breach of covenant of good faith and fair dealing, plaintiff has suffered and continues to suffer substantial losses in earnings, retirement benefits and other employee benefits that he would have received had defendant not breached the agreement.

5. As a further proximate result of the above-mentioned acts, plaintiff has suffered humiliation, mental pain and anguish.

## COUNT SIX

### (VIOLATION OF NJ WAGE PAYMENT LAW N.J.S.A. 34:11-4.1 et seq.)

1. Plaintiff repeats and alleges each and every allegation set for the aforementioned paragraphs in Counts One, Two, Three, Four and Five above as if fully set forth again at length.

Exhibit A

9

2.    As defined in the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq., Defendant PBC violated said law, by failing to pay plaintiff his wages earned and retaliating against him for his complaints/, defendant violated the New Jersey Wage Payment Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against all Defendants, individually, jointly, severally and each of them for all aforementioned claims, for the following injunctive and monetary relief as follows:

1. An order compelling Defendant PBC to take prompt appropriate and effective corrective measures, including those that effect all supervisors and personnel, to prevent abuse, harassment, bullying and discrimination complained of in this Complaint by any employee, agent, and/or representative toward any member of the PBC community.

2. An order reinstating Plaintiff to the position of employment that he held at the time of termination.

3. An order enjoining Defendant from taking retaliatory action of any type against any employees for reporting to or objecting to Defendants' improper activities, policies, and/or practices believed to be in violation of contract, law, rule, and/or regulation promulgated pursuant to law.

4. Any other prospective injunctive relief that the Court deems just and appropriate

5. For compensatory damages including lost wages and benefits, and emotional distress damages

6. Punitive damages

7. Pain and suffering

8. Attorney fees and costs, plus interest

9. For such other and further relief as the Court deems proper.

By: _____
Christopher C. Roberts, Esq.

Dated: March 15, 2020

Exhibit A

10

## DESGINATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Christopher Roberts, Esq., is hereby designated as trial counsel for the plaintiff in this matter.

By: _____
Christopher C. Roberts, Esq.

Dated: March 15, 2020

## CERTIFICATION OF NO OTHER ACTIONS

Pursuant to Rule 4:5-1, it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of appending arbitration pending arbitration proceeding to the best of our knowledge or belief. Also, to the best of our belief, no other action or arbitration proceeding is known of no other parties that should be joined in the above action. In addition, we recognize the continuing obligation of each party to file and serve on all parties and the Court an amended certification if there is a change in the facts stated in this original certification.

By: _____
Christopher C. Roberts, Esq.

Dated: March 15, 2020

## JURY DEMAND

Plaintiff hereby demands trial by a jury on all triable issues raised in this complaint, pursuant to R. 1:8-2 and R. 4:35-1(a)

By: _____
Christopher C. Roberts, Esq.

Dated: March 15, 2020

Exhibit A

11

# EXHIBIT B

Exhibit B



To:             All PBC New Jersey Employees

From:          Oriol Sanchez – Human Resources Manager

Date:          January 5th, 2017

Re:            Updated General Rules of Conduct


Effective **May 16th 2015**, preventable vehicle collisions will be handled as a separate track of progressive discipline, as outlined in the New Jersey Vehicle Collision Policy. This policy is in addition to the current New Jersey Market Progressive Discipline/General Rules of Conduct Policy and Attendance Policy.

Please find these three policies attached. Revisions to these policies will have no effect on an individual's current level of discipline except for active Vehicle Collision disciplines these should be separated into the new policy.

Please carefully read the attached pages and if you have any questions, please contact your manager or a member of the New Jersey HR team.

Exhibit B

**Pepsi Beverages Company**
**New Jersey Market**

# Progressive Discipline Policy

PBC expects all employees to comply with our General Rules of Conduct. If an employee fails to comply with any of our General Rules of Conduct, the Company will provide corrective action in an attempt to improve employee behavior and/or performance. Corrective action for many types of conduct and performance deficiencies will <u>usually</u> be progressive. Our progressive discipline process consists of the following steps:

| <u>Non-Compliance</u> | <u>Discipline</u> | <u>Active Life of Discipline</u> |
|---|---|---|
| First | Documented Oral | Six (6) Months |
| Second | Written | Nine (9) Months |
| Third | Suspension (w/o pay: 1-5 days) | Twelve (12) Months |
| Fourth | Termination | ---------------------- |

Each violation of our General Rules of Conduct will be reviewed on a case by case basis and may warrant any level of discipline determined by the Company to be appropriate, up to and including termination for a first offense (see Terminable Offenses).

The active life of a level of discipline is not affected by the end of the active life of an earlier level of discipline. For example, an employee who is suspended remains at the suspension level of discipline for 12 months, regardless of the fact that the active life of a written warning may come to an end, and is subject to termination for another offence during the 12-month period.

Exhibit B

Effective January 5, 2017                                                                                                      2

**Pepsi Beverages Company**
**New Jersey Market**

# General Rules of Conduct

Violation of work rules such as the following will result in disciplinary action in accordance with our Progressive Discipline policy.

- Failure to meet all standards of performance (including accountabilities contained in our "Role Guides").

- Failure to perform all assigned work.

- Failure to comply with all Company/department standard operating procedures.

- Failure to complete "Call Day Lists" daily (Sales Employees).

- Solicitation during working time and/or distribution of literature during working time or at any time in work areas.

- Damaging or defacing Company property of any kind.

- Smoking in non-designated areas (inside or outside the facility).

- Discarding any waste other than in approved receptacles.

- Failure to maintain all work stations or vehicles in a clean, appropriate manner.

- Use of abusive language, gestures, or actions in the workplace or in the trade.

- Failure to comply with all applicable Environmental Protection Agency (EPA), Department of Transportation (DOT) and Occupational Safety and Health Act (OSHA) regulations or other applicable governmental regulatory standards.

- Failure to follow all safety rules for your area/function/position as well as any provided by your managers, or failure to perform all work in a safe manner.

- Failure to immediately report to your supervisor any condition or practice you think may cause injury or damage equipment.

- Failure to immediately report to management (no later than end of shift) any incident on the job or on Company premises involving personal injury, vehicle accident, or property damage.

Exhibit B

Effective January 5, 2017                                                                                              3

- Failure to notify management of any matter <u>before</u> contacting 1-800-JOBHURT regarding that matter.

- Failure to notify <u>1-800-JOBHURT</u> within twenty-four (24) hours from the time the incident occurred of any incident on the job or on Company premises involving personal injury, vehicle accident, or property damage.

- Failure to properly wear and use all appropriate personal protective equipment (PPE) at all times in designated areas consistent with safety polices, including head, eye, ear, and foot protection.

- Wearing sneakers or soft-soled shoes.

- Creating a distraction to co-workers or engaging in conduct that may endanger the safety of others, including horseplay.

- Failure to maintain appropriate hair and beard restraint in the manufacturing area.

- Failure to wear the Company approved uniform, including work shoes and cap, during working hours or while performing business activities.

- Failure to properly maintain all elements of the uniform in a fashion that is clean and free of rips and tears.

- Failure to maintain appropriate employee conduct with all PBC customers, vendors, and providers.

- Failure to maintain proper personal hygiene and a clean, neat personal appearance at all times while representing PBC or failure to comply with any personal grooming standards set by the Company.

- Failure to comply with all applicable Workers Compensation and Transitional Duty requirements, including:
    - Timely and responsive communication with your Manager and Company designated Case Nurse and/or Case Manager.
    - Attendance at all physician and therapy appointments.
    - Compliance with all physician/medical directions.
    - Meeting all performance expectations while on Transitional Duty.

Exhibit B

**Pepsi Beverages Company
New Jersey Market**

# General Rules of Conduct – Terminable Offenses

Below are examples of "Terminable Offenses". These actions are prohibited by the Company and may result in immediate termination of employment for a first offense.

- Theft from the Company, a fellow employee, or any of the Company's customers or suppliers, irrespective of the value of the item(s) taken.

- Sleeping while on duty.

- Possession, use, presence, purchase, attempting to sell or purchase, or being under the influence of illegal drugs or alcohol on the job or on Company property at any time.

- Testing positive on a DOT required drug test or company-mandated drug test.

- Failure to submit to drug testing, submitting an adulterated specimen, or otherwise obstructing or refusing to cooperate in the testing process.

- Unauthorized or negligent use, destruction, or abandonment of Company property.

- Fighting, threatening, intimidating, or any act of violence towards employees, supervisors, customers, or suppliers (Violation of PBC's Workplace Violence Policy).

- Misrepresentation of facts or falsification of Company records or other documents.

- Possession of firearms or a weapon of any variety on Company premises or property at any time or while on duty or on break or at lunch.

- Discrimination or illegal harassment against any employee, customer, or any individual during employment, or any other violation of the Company's Equal Employment Opportunity Policy or Policy Prohibiting Sexual Harassment.

- Insubordination, described as the refusal to follow the non-life/health threatening directions of a management representative.

- Job abandonment, by failing to report to work or to call in acceptable reasons for not reporting, for three consecutive working days.

Exhibit B

Effective January 5, 2017                                                                                          5

- Leaving the premises (facility/routes) during working time or paid breaks without management approval.

- Failure to report a license revocation or suspension immediately to management pursuant to DOT or other governmental regulations.

- Carrying personnel not authorized by the Company in a Company-owned vehicle or allowing personnel not authorized by the Company to handle Company product/equipment.

- Failure to report any incident on the job or on Company premises involving personal injury, vehicle accident, or property damage to both management and 1-800-JOBHURT within 7 days of the date of the incident.

- Punching (swiping in or out) the time clock for another employee.

- Punching (swiping in or out) when departing/entering the PBC facility.

- Use of a recording device on Company property or in the trade, except with the express permission or direction of management.

- Conviction of a crime by a current employee that is reasonably related to the employee's position or that results in jail time.

- Any other highly inappropriate conduct that substantially and/or adversely affects the Company's business interests.

Exhibit B

Effective January 5, 2017                                                              6

**Pepsi Beverages Company**
**New Jersey Market**

# Attendance Policy

PBC's continued successful operation is dependent upon the regular attendance and punctuality of all employees. An employee who is consistently late or absent for work places a burden on other employees and our ability to effectively service our customers.

The Company understands that from time to time employees may have personal problems that would interfere with their ability to do their job. In such instances, individuals are encouraged to utilize "Private Line", PBC's confidential Employee Assistance Program, by calling 1-800-223-7486. In addition, if any employee requires a leave of absence, requests can be made by speaking with their supervisor or Human Resources Manager.

All employees are responsible for notifying their <u>immediate</u> supervisor through their designated call-out procedures at least one-half hour (1/2) prior to their start time of any full day of absence. Employees are expected to provide this notification <u>every</u> day of absence.

An occurrence is failure to be at work when scheduled, regardless of the reason. Points will be charged accordingly as follows:

| <u>Type of Occurrence</u> | <u>Points</u> |
|---|---|
| ***Lateness*** | |
| Reporting 6 – 60 minutes late of scheduled start time | One-half (1/2) |
| Reporting more than 1 hour late of scheduled start time | One (1) |
| Failure to swipe in at beginning of shift | One-half (1/2) |
| ***Leaving Early*** | |
| Leaving work early, with permission, before completing at least one-half (1/2) day | One (1) |
| Leaving work early, with permission, after completing at least one-half (1/2) day | One-half (1/2) |
| Failure to swipe out immediately prior to departure | One-half (1/2) |

Exhibit B

Effective January 5, 2017                                                                                    7

| Type of Occurrence | Points |
|---|---|

**Absence**

One day of absence with proper notice (notifying immediate Supervisor through their designated call out procedures at least ½ hour prior to start time) — One (1)

One day of absence without proper notice (as stated above) — Two (2)

Two or more days of absence due to personal illness or accident. Proper medical documentation verifying illness/accident must be presented to immediate supervisor upon return to work. — One (1)

Every day of absence not supported by medical documentation (presented upon return) — One (1)

*Three consecutive days of no call / no show shall be considered job abandonment and will result in termination.*

**Attendance Discipline**

Excessive occurrences in any rolling twelve (12) months result in discipline according to the following schedule:

| | |
|---|---|
| 5 or 6 Points | Oral |
| 7 or 8 Points | Written |
| 9 or 10 Points | Final |
| 11 Points | Termination |

A given level of formal discipline will be issued only the first time an employee reaches that level within a rolling 12-month period. It will not be repeated within 12 months after it has been issued. Thus, for example, an employee who reaches 9 points in March and is issued a Final Warning, and who drops to 7 points in April when an absence the previous April falls off his record, will not receive another Written Warning for reaching 7 points and will not receive another Final Warning if he/she goes back to 9 points in May. However, he/she is still at the Final Warning level and is subject to termination should he/she reach 11 points in a rolling 12-month period.

*This policy does not apply to absences protected by the Family and Medical Leave Act or the New Jersey Family Leave Act. Please consult PBC's Family and Medical Leave Policy for information on absences protected by those laws.*

Exhibit B

Effective January 5, 2017                                                                 8

## Pepsi Beverages Company
### New Jersey Market

# Vehicle Collision Policy

All progressive discipline for preventable collisions will be evaluated on a **rolling 24-month period.**
Certain offenses, however, will be deemed to be immediately terminable (see below):

| One | (1) Preventable Collision: | oral warning |
| Two | (2) Preventable Collisions: | written warning |
| Three | (3) Preventable Collisions: | one (1) to five (5) day unpaid suspension and final written warning |
| Four | (4) Preventable Collisions: | termination |

Due to the serious nature of the following infraction, having a preventable collision resulting in serious injury or major property damage will be handled independently and include disciplinary action up to and including immediate termination for the first offense.

Exhibit B

Effective January 5, 2017                                                                                     9

## Pepsi Beverages Company
### New Jersey Market

# Employee
# Acknowledgement of Receipt

I acknowledge that I have received the following documents, marked "Effective January 5th, 2017":

1) PBC New Jersey Market Progressive Discipline Policy

2) PBC New Jersey Market General Rules of Conduct

2017 Update

- Punching (swiping in or out) when departing/entering the PBC facility.

3) PBC New Jersey Market Attendance Policy

4) PBC New Jersey Market Preventable Collision Policy

_____

Employee Name (Print)

_____

Employee Signature

_____

Date

Exhibit B

Effective January 5, 2017                                                                        10